UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ROBERT LEE BAILEY #237838,

        Plaintiff,                        Case No. 2:07-cv-115

v.                                        Honorable Gordon J. Quist

CHRISTOPHER GOLLADAY, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On June 15, 2007, this Court ordered service of Plaintiff's complaint on Defendants. On November 20, 2007, Defendants Caruso, Daniels, McDonald, Sherry, and Theut filed a motion for summary judgment (docket #25) on the ground that Plaintiff failed to exhaust his available administrative remedies against them. In addition, Defendants Golladay, Forrest, Mahar, Storey, Duvall, Caruso, Daniels, McDonald, Sherry, and Theut filed a motion for summary judgment (docket #28), addressing the merit of Plaintiff's claims. Plaintiff filed a response (docket #34) to the motions for summary judgment on or about February 13, 2008.

## Applicable Standard

        Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record

Case 2:07-cv-00115-RHB   ECF No. 36 filed 05/23/08   PageID.385   Page 3 of 18

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff is presently incarcerated at the Alger Maximum Correctional Facility (LMF). In his *pro se* complaint, he sues Defendants Corrections Officer Christopher Golladay, Corrections Officer John Duvall, Corrections Officer Kirt Mahar, MDOC Director Patricia Caruso, Warden Jeri-Ann Sherry, Hearing Officer David Theut, Corrections Officer Matthew Storey, Corrections Officer John Forrest, Inspector Ian McDonald, and Corrections Officer R. Daniels.

Plaintiff claims that on January 14, 2006, Defendant Golladay observed Plaintiff at his cell door with a betting slip. Plaintiff refused to comply with an order to hand over the betting slip, and instead ripped it into pieces and flushed it down the toilet as Golladay stood outside the cell door window watching. Plaintiff's refusal to hand over the betting slip caused Defendant Golladay to become extremely angry and scream "fucking shakedown." At this point, Plaintiff and his cell mate were ordered out of the cell to be patted down. While Defendant Golladay was searching Plaintiff, he informed Plaintiff that he would be sure to write five major misconduct tickets on him, instead of just one ticket. Plaintiff was then escorted to the television / card room. Defendant Golladay then returned to Plaintiff's cell to conduct a cell search, where he was joined by Defendant Headly, who stood in front of the cell laughing in a taunting manner.

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff is presently incarcerated at the Alger Maximum Correctional Facility (LMF). In his *pro se* complaint, he sues Defendants Corrections Officer Christopher Golladay, Corrections Officer John Duvall, Corrections Officer Kirt Mahar, MDOC Director Patricia Caruso, Warden Jeri-Ann Sherry, Hearing Officer David Theut, Corrections Officer Matthew Storey, Corrections Officer John Forrest, Inspector Ian McDonald, and Corrections Officer R. Daniels.

Plaintiff claims that on January 14, 2006, Defendant Golladay observed Plaintiff at his cell door with a betting slip. Plaintiff refused to comply with an order to hand over the betting slip, and instead ripped it into pieces and flushed it down the toilet as Golladay stood outside the cell door window watching. Plaintiff's refusal to hand over the betting slip caused Defendant Golladay to become extremely angry and scream "fucking shakedown." At this point, Plaintiff and his cell mate were ordered out of the cell to be patted down. While Defendant Golladay was searching Plaintiff, he informed Plaintiff that he would be sure to write five major misconduct tickets on him, instead of just one ticket. Plaintiff was then escorted to the television / card room. Defendant Golladay then returned to Plaintiff's cell to conduct a cell search, where he was joined by Defendant Headly, who stood in front of the cell laughing in a taunting manner.

Plaintiff alleges that 20 minutes later, Defendant Headly ordered Plaintiff and his cell mate to return to their cell. When Plaintiff arrived at the cell, he observed that his television had been destroyed, there was a crack on the left side of his speaker, his pictures were ripped off the bulletin board and scattered on the floor and in the toilet, his tape box was lodged upside down between the floor lockers with the contents broken on the floor, his bedding was scattered on the floor and bunk, and his headphones were broken. When Plaintiff attempted to speak to Defendant Golladay about this, he was ordered to take his "ass to chow." Plaintiff reported the incident to Defendant Golladay's supervisor, Sergeant Burk, who immediately called the housing unit to investigate the complaint.

Plaintiff states that when he was returning to his cell from chow, he was stopped by Sergeant Burk, who asked for his state issued identification card, but this card had already been taken by Defendant Golladay. Sergeant Burk ordered Plaintiff to return to his cell and stated that he would be there shortly to resolve the matter. Plaintiff returned to the housing unit and saw that Defendant Golladay had returned to his cell and was further destroying his property. Plaintiff attempted to grab his tape box away from Defendant Golladay, and Defendant Golladay struck him with a closed fist in the jaw. Defendant Golladay then grabbed Plaintiff's wrist, propelled him out of the cell, and slammed him into the concrete wall, knocking the wind out of him. Defendant Golladay then put Plaintiff up against the wall and began punching him in the ribs, and then slammed his head into Plaintiff's abdomen and ribs. Plaintiff put his arms on Defendant Golladay's shoulders in an attempt to dislodge him, and Defendant Golladay then struck Plaintiff in the side of his head and face, causing both Plaintiff and Defendant Golladay to fall to the floor, with Defendant Golladay landing on top of Plaintiff. Plaintiff finally submitted as other officers began to arrive. When Defendant Storey arrived, he grabbed Plaintiff's arms and held them securely while Defendant Duvall began

4

to punch Plaintiff in the upper torso. Defendant Storey then placed Plaintiff in handcuffs so tight that they caused more pain. While Plaintiff was immobilized on his stomach, Defendant Golladay told Plaintiff that he was going to kill him. Subsequently, Defendants Golladay, Forrest, Mahar, Storey, and Duvall struck Plaintiff in the face and head numerous times with feet and fists. Plaintiff claims that Defendant Mahar punched and kneed him in the back.

Plaintiff was escorted to the segregation unit by Defendants Duvall, Storey, Forrest and an unknown officer holding a camera. While Plaintiff was being taken to segregation in handcuffs and leg shackles, he was subjected to racial slurs and threats, such as "You black motherfucker" and "We going to kill you Nigger." Plaintiff's head was forced down, causing him to choke. As they approached the segregation unit, the officer holding Plaintiff's head repeatedly slammed it into the steel entrance structure, causing Plaintiff dizziness, faintness, and the inability to maintain normal balance. Plaintiff was carried into the segregation unit and thrown into a cage shower. Plaintiff begged for medical attention until he passed out. Plaintiff claims that he was unconscious for approximately an hour and 15 minutes, when officers pulled him out of the shower by the leg irons. Nurse Lyne Hansen asked Plaintiff about his injuries and paramedics were called. Plaintiff was then taken to War Memorial Hospital.

Plaintiff arrived at the hospital at approximately 9:00 p.m., where he was examined by nurses and the doctor. Plaintiff was given a CAT scan of his head, and x-rays of his jaw, wrist, and hands. Plaintiff's injuries consisted of two black eyes, nerve damage to his left eye, multiple contusions to his head and body, possible fracture to his left wrist, nerve damage to his wrists and permanent scars. Plaintiff was then sent to the Chippewa Correctional Facility (URF), where he was strip searched and escorted to segregation. Plaintiff was given a personal property receipt dated January 15, 2006, which identifies Defendant Daniels as the packing officer who failed to properly

safeguard Plaintiff's property. Consequently, Plaintiff suffered loss and damage of the following items: 12 tapes, tape player, head phones, wrist watch, and a coat.

Plaintiff was charged with disciplinary charges of assault on staff by Defendant Golladay and was placed on "no out of cell movement." Plaintiff claims that Defendant Golladay fabricated the misconduct report, as well as his testimony. Defendant Golladay failed to disclose potential witnesses in the misconduct report. On January 24, 2006, Plaintiff received a disciplinary hearing before Defendant Theut despite his request for disqualification. Plaintiff was found guilty and was sentenced to 30 days detention and loss of privileges. Plaintiff's subsequent request for rehearing was denied.

For relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## Discussion

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with

prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievance. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II

---

[1]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

In their motion for summary judgment (docket #25), Defendants Caruso, Daniels, McDonald, Sherry, and Theut contend that Plaintiff did not file any grievances naming them as required by MDOC policy. Defendants Caruso, Daniels, McDonald, Sherry, and Theut attach a copy of the grievance inquiry on Plaintiff, which shows all the grievances filed by him as of September 19, 2007. (*See* Defendants' Exhibit A.) In addition, Defendants offer copies of the grievances filed by Plaintiff which concern the incidents set forth in the complaint. As stated by Defendants, these grievances do not specifically name Defendants Caruso, Daniels, McDonald, Sherry, or Theut. In addition, Defendants attach the response to Grievance Numbers URF-198888-28e, URF-198889-28e, and URF-198890, which were rejected because they were untimely and because they were duplicative. (*See* Defendants' Exhibits B-G.)

In Plaintiff's response to the motion for summary judgment filed by Defendants Caruso, Daniels, McDonald, Sherry and Theut, he states that on December 11, 2006, he filed a direct grievance numbered URF 198888, 198889, 198890, after discovering evidence of an altered video

8

tape and previously filed complaints of fellow prisoners for the on-going practice of physical abuse and failure to protect. Plaintiff states that the grievance was written on Defendants Caruso, Sherry and McDonald and alleged "staff corruption," which may be filed directly to step III. In support of this contention, Plaintiff attaches a copy of his direct grievance, which states that Defendant McDonald deliberately destroyed evidence of video tape of the excessive force and that Defendants Caruso, Sherry and McDonald were guilty of corruption in covering up the incident. (*See* Plaintiff's Exhibit B-1.) However, as noted above, this grievance was rejected for failing to comply with the grievance requirement. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 127 S. Ct. at 922-23; *Woodford*, 126 S. Ct. at 2386. Because Plaintiff failed to properly exhaust his administrative remedies against Defendants Caruso, Daniels, McDonald, Sherry, and Theut, the undersigned recommends that their motion for summary judgment (docket #25) be granted.

In Defendants' second motion (docket #28), they contend that they are entitled to summary judgment on Plaintiff's due process claim regarding the destruction of his property pursuant to *Parratt v. Taylor*, 451 U.S. 527, 537 (1981). A plaintiff alleging infringement of property rights must show that the deprivation was caused by action taken pursuant to established state procedures. *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-436 (1982). If the official performing the state procedure fails to follow the state procedure or conform his conduct to state law, the plaintiff's injury is the result of a "random and unauthorized act" which the state was unable to foresee and thus prevent. In *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), overruled in part on other grounds *Daniels v Williams*, 474 U.S. 327 (1986), the Supreme Court held that no procedural due process violation occurs when the deprivation is the

9

result of a "random and unauthorized act," unless the state failed to provide the plaintiff with an "adequate post-deprivation remedy."

> Application of the principles recited above to this case leads us to conclude the respondent has not alleged a violation of the Due Process Clause of the Fourteenth Amendment. Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the state to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation.

*Parratt*, 451 U.S. at 543.

The Sixth Circuit has held that in procedural due process claims brought pursuant to 42 U.S.C. § 1983, the "Parratt doctrine" allows dismissal where the state provides an adequate postdeprivation remedy if:

> 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416-417 (6th Cir. 1996). In cases where these conditions are present, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong." *Copeland*, 57 F.3d at 479; *Pilgrim*, 92 F.3d at 417.

Defendants state that in Michigan, there are adequate post-deprivation remedies for both negligent and intentional conversions of personal property. Defendants state that the Michigan Court Rules and statutory provisions available to Plaintiff include M.C.R. 3.105, which allows an action for claim and delivery, M.C.L. § 600.2920, which provides for a civil action to recover

10

possession of, or damage for, good and chattels unlawfully taken away or detained, and M.C.L. § 600.6401, the Michigan Court of Claims Act, which establishes a procedure to compensate for alleged unjustifiable acts of state officials. In addition, Defendants state that prisoners may also pursue claims of up to $1,000 through the State Administrative Board. Defendants assert that because Plaintiff has failed to petition the State Administrative Board for reimbursement, or to utilize other procedures available to him, he cannot establish a due process violation.

In response to Defendants' motion for summary judgment, Plaintiff states that the State Administrative Board does not provide adequate reimbursement. Therefore, the available remedies are inadequate and his due process claim is not barred by the holding in *Parratt*. However, Plaintiff fails to allege any facts in support of this assertion. Rather, Plaintiff appears to be claiming that because he was not reimbursed following his grievance on the issue of his destroyed property, the remedies available are inadequate. Such assertions are insufficient to show that there is a genuine issue of material fact with regard to Plaintiff's due process claim. As noted by Defendants, the fact that the remedies provided by the state do not provide all the relief which may be available under 42 U.S.C. § 1983 does not mean that the state remedies are ineffective. *Parratt*, 451 U.S. at 544. Therefore, Defendants are entitled to summary judgment on Plaintiff's due process claim.

Defendants Caruso, Daniels, McDonald, Sherry, and Theut claim that they are entitled to summary judgment because they were not personally involved in the underlying misconduct. Should the court grant their motion for summary judgment (docket #25) pursuant to the exhaustion requirement, it need not address this claim. However, the undersigned notes that even if Plaintiff had exhausted his administrative remedies as to these Defendants, they are entitled to summary judgment for lack of personal involvement.

11

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932

12

F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Defendants Caruso, Daniels, McDonald, Sherry, and Theut contend that Plaintiff has not alleged facts establishing that they were personally involved in the activity which forms the basis of his claim. The only roles of Defendants Caruso, Daniels, McDonald, Sherry and Theut in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, Daniels, McDonald, Sherry, and Theut cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the undersigned concludes that Defendants Caruso, Daniels, McDonald, Sherry, and Theut are entitled to summary judgment for lack of personal involvement.

In addition, Defendants contend that they are entitled to Eleventh Amendment immunity to the extent that they are sued in their official capacities. Plaintiff fails to specifically state the capacity in which he is suing the named Defendants. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984),

13

overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[2] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

However, in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001), the Sixth Circuit noted that "post- *Wells* jurisprudence shows that we have applied a "course of proceedings" test to determine whether § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable, albeit without clearly labeling the test as such." *Moore*, 272 F.3d at 772; *Shepherd v. Wellman*, 313 F.3d 963, 968 (6th Cir. 2002).

> The "course of proceedings" test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability.

*Moore*, 272 F.3d at 772, n. 1. In this case, Plaintiff claims that Defendants acted maliciously and sadistically. In addition, Plaintiff requests damages. Moreover, Defendants raised qualified immunity as a defense to Plaintiff's claims. Therefore, the undersigned concludes that Defendants are not entitled to summary judgment on this issue as they had actual knowledge of the potential for individual liability.

---

[2] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

Defendants also assert that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

16

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

As noted above, there is no genuine issue of material fact that Defendants Caruso, Daniels, McDonald, Sherry, and Theut violated Plaintiff's constitutional rights. Therefore, even if Plaintiff had exhausted his administrative remedies with regard to Defendants Caruso, Daniels, McDonald, Sherry, and Theut, the undersigned concludes that they are entitled to qualified immunity.

However, the undersigned notes that Defendants Golladay, Forrest, Mahar, Storey, and Duvall do not appear to be entitled to qualified immunity. As noted above, Plaintiff alleges that Defendants Golladay, Forrest, Mahar, Storey, and Duvall engaged in excessive force, causing him to suffer severe injuries. Their assertion that they acted reasonably in light of Plaintiff's misconduct is an issue of fact. A review of Plaintiff's complaint reveals that he is claiming that Defendants continued to savagely hit and kick him after he was subdued. Such conduct, if true, is clearly in violation of Plaintiff's constitutional rights. Therefore, the undersigned concludes that Defendants Golladay, Forrest, Mahar, Storey and Duvall are not entitled to qualified immunity.

**Recommended Disposition**

For the foregoing reasons, I recommend that the motion for summary judgment filed by Defendants Caruso, Daniels, McDonald, Sherry and Theut for failure to exhaust administrative remedies (docket #25) be granted. In addition, I recommend that Defendants' motion for summary judgment (docket #28) be granted with regard to Plaintiff's due process claim and his claims against Defendants Caruso, Daniels, McDonald, Sherry, and Theut, but denied with regard to Defendants Golladay, Forrest, Mahar, Storey and Duvall.

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated: May 23, 2008

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).