UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT LEE BAILEY,

       Plaintiff,                     Case No. 2:07-cv-115

v.                                         Honorable Gordon J. Quist

CHRISTOPHER GOLLADAY, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff is presently incarcerated at the Alger Maximum Correctional Facility. In his *pro se* complaint, he sues the remaining defendants Corrections Officer Christopher Golladay, Corrections Officer John Duvall, Corrections Officer Kirt Mahar, Corrections Officer Matthew Storey, and Corrections Officer John Forrest. Plaintiff claims that on January 14, 2006, defendant Golladay observed plaintiff at his cell door with a betting slip. Plaintiff refused to comply with an order to hand over the betting slip, and instead ripped it into pieces and flushed it down the toilet as Golladay stood outside the cell door window watching. Plaintiff claims that his refusal to hand over the betting slip caused defendant Golladay to become extremely angry and scream "fucking shakedown." At this point, plaintiff and his cell mate were ordered out of the cell to be patted down. While defendant Golladay was searching plaintiff, he allegedly informed plaintiff that he would be sure to write five major misconduct tickets on him, instead of just one ticket. Plaintiff was then escorted to the television room. Defendant Golladay then returned to plaintiff's cell to conduct a cell search, where he was joined by defendant Headly, who stood in front of the cell laughing in a taunting manner.

Plaintiff alleges that 20 minutes later, defendant Headly ordered plaintiff and his cell mate to return to their cell. When plaintiff arrived at the cell, he observed that his television had been destroyed, there was a crack on the left side of his speaker, his pictures were ripped off the bulletin board and scattered on the floor and in the toilet, his tape box was lodged upside down between the floor lockers with the contents broken on the floor, his bedding was scattered on the floor and bunk, and his headphones were broken. When plaintiff attempted to speak to defendant Golladay about this, he was ordered to take his "ass to chow." Plaintiff reported the incident to defendant Golladay's supervisor, Sergeant Burk, who immediately called the housing unit to investigate the complaint.

Plaintiff states that when he was returning to his cell from chow, Sergeant Burk stopped plaintiff and asked for his state issued identification card. However, the card had already been taken by defendant Golladay. Sergeant Burk ordered plaintiff to return to his cell and stated that he would be there shortly to resolve the matter. Plaintiff returned to the housing unit and saw that defendant Golladay had returned to plaintiff's cell and was further destroying his property. Plaintiff attempted to grab his tape box away from defendant Golladay, and defendant Golladay struck him with a closed fist in the jaw. Defendant Golladay then grabbed plaintiff's wrist and propelled him out of the cell and slammed him into a concrete wall, knocking the wind out of him. Defendant Golladay then put plaintiff up against the wall and began punching him in the ribs and then slammed his head into plaintiff's abdomen and ribs. Plaintiff put his arms on defendant Golladay's shoulders in an attempt to dislodge him and defendant Golladay then struck plaintiff in the side of his head and face, causing both plaintiff and defendant Golladay to fall to the floor with defendant Golladay landing on top of plaintiff. Plaintiff finally submitted as other officers began to arrive. When defendant Storey arrived, he grabbed plaintiff's arms and held them securely while

defendant Duvall began to punch plaintiff in the upper torso. Defendant Storey then placed plaintiff in handcuffs which were so tight that they caused more pain. While plaintiff was immobilized on his stomach, defendant Golladay told plaintiff that he was going to kill him. Subsequently, defendants Golladay, Forrest, Mahar, Storey and Duvall struck Plaintiff in the face and head numerous times with their feet and their fists. Plaintiff claims that defendant Mahar punched and kneed him in the back.

Plaintiff was escorted to the segregation unit by defendants Duvall, Storey, Forrest and an unknown officer holding a camera. While plaintiff was being taken to segregation in handcuffs and leg shackles, he was subjected to racial slurs and threats, such as "You black motherfucker" and "We going to kill you Nigger." Plaintiff's head was forced down, causing him to choke. As they approached the segregation unit, the officer holding plaintiff's head repeatedly slammed it into the steel entrance structure, causing plaintiff dizziness, faintness, and the inability to maintain normal balance. Plaintiff was carried into the segregation unit and thrown into a cage shower. Plaintiff begged for medical attention until he passed out. Plaintiff claims that he was unconscious for approximately one hour and fifteen minutes, when officers pulled him out of the shower by the leg irons. Nurse Lynn Hansen asked plaintiff about his injuries and paramedics were called. Plaintiff was then taken to War Memorial Hospital.

Plaintiff arrived at the hospital at approximately 9:00 p.m., where he was examined by nurses and a doctor. Plaintiff was given a CAT scan of his head and x-rays were taken of his jaw, wrist and hands. Plaintiff's injuries consisted of two black eyes, nerve damage to his left eye, multiple contusions to his head and body, possible fracture to his left wrist, nerve damage to his wrists, and permanent scars. Plaintiff was then sent to the Chippewa Correctional Facility, where he was strip searched and escorted to segregation.

Plaintiff was charged with disciplinary charges of assault on staff by defendant Golladay and was placed on "no out of cell movement." Plaintiff claims that defendant Golladay fabricated the misconduct report, as well as his testimony. Defendant Golladay failed to disclose potential witnesses in the misconduct report. For relief, plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co.*

*v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that excessive force was used against him. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat

"reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

The evidence is indisputable that plaintiff initiated the incident and the force used by defendants was necessary and reasonable under the circumstances. Further, there exists no evidence to support plaintiff's claim that excessive force was used. Rather, the evidence establishes that necessary force was used to control the situation that plaintiff created. The Critical Incident reports and videotape evidence establish that force was necessary to restrain plaintiff after he assaulted defendant Golladay. Plaintiff ran back to his cell when he learned that defendant Golladay was conducting a shakedown of plaintiff's cell. Plaintiff had just been told by a corrections officer to go to the day room and have a seat and not to go back to his cell because it was being searched. That officer then warned defendant Golladay by radio that plaintiff was returning to the cell and that Golladay should watch his back. In the videotape, plaintiff is observed removing his coat while running down the hall to his cell and then dropping the coat to the ground just before he enters the cell. There is an immediate physical confrontation between defendant Golladay and plaintiff, ending with plaintiff being taken down to the floor by corrections officers. Defendant Golladay sustained multiple facial lacerations as a result of plaintiff's assault. Plaintiff asserts that excessive force was used to keep him restrained. Plaintiff claims that force was unnecessary because he was not resisting. The Critical Incident Reports and the videotape evidence show that plaintiff was restrained by multiple officers who handcuffed him and applied leg irons while holding down plaintiff's legs,

arms and head. Three other prisoners were involved in the incident when they struck officers responding to help restrain plaintiff during his initial assaultive conduct. Those three prisoners were also similarly restrained and each prisoner remained restrained until the prisoners individually could be safely removed from the area. As a result of the assaultive conduct, four corrections officers were treated at War Memorial Hospital. Plaintiff was taken to the hospital after he had a seizure in the shower cell where he was locked after the incident. Plaintiff was taken to the hospital emergency room and received a head x-ray, the results of which were normal. Plaintiff was released and returned to the prison without incident. Plaintiff received no significant injury as a result of the necessary force used by the officers to control and restrain plaintiff's aggressive actions. Plaintiff claims that he was not resisting, but the videotape evidence shows that plaintiff entered the cell and initiated the contact. Furthermore, the videotape evidence does not support plaintiff's claims. Plaintiff only stopped his aggressive behavior when he was completely restrained by the officers. In my opinion, the techniques employed by the officers to hold plaintiff down were necessary to restrain plaintiff and stop his aggressive actions. In the opinion of the undersigned, plaintiff's Eighth Amendment rights were not violated.

Defendants also move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who

stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff cannot establish that defendants took action against him that was not reasonable under the circumstances. Plaintiff caused the incident to occur by initiating the assaultive conduct. Defendants had no choice but to use force to restrain plaintiff in order to prevent further aggressive behavior. There exists no evidence to show that defendants used excessive force. In fact, the evidence shows that defendants should be commended for their quick and notably calm conduct that turned what could have been an incident involving a very a large number of prisoners into a relatively quick incident involving only four prisoners. In the opinion of the undersigned, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is recommended that defendants' motion for summary judgment (Docket #60) be granted and that this case be dismissed in its entirety.

Further, if the court adopts this recommendation, the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See*

*McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 10, 2009